# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

| | |
|---|---|
| In the matter of: ) | |
| ) | |
| ROBERT C. HALL, II and ) | Chapter 13 |
| SELENA A. HALL, ) | |
| ) | Number <u>14-40332-EJC</u> |
| *Debtors.* ) | |
| ) | |
| ) | **FILED** |
| MARVIN BRUCH and ) | Lucinda B. Rauback, Clerk |
| MARGARET BRUCH, ) | United States Bankruptcy Court |
| ) | Savannah, Georgia |
| *Movants,* ) | By cryan at 5:02 pm, Aug 19, 2014 |
| ) | |
| v. ) | |
| ) | |
| ROBERT C. HALL, II and ) | |
| SELENA A. HALL, ) | |
| ) | |
| *Respondents.* ) | |

<u>OPINION AND ORDER GRANTING MOTION FOR PARTIAL RELIEF FROM STAY
TO ALLOW CIVIL LITIGATION TO PROCEED</u>

Before the Court is the Motion for Partial Relief from Stay to Allow Civil Litigation to Proceed ("<u>Motion</u>") (dckt. 22) filed by Marvin and Margaret Bruch ("<u>Movants</u>" or "<u>Bruchs</u>"). In their motion, the Bruchs seek permission to pursue a certain state court civil action against the joint debtor, Selena A. Hall ("<u>Hall</u>" or "<u>Debtor</u>"), arising out of an automobile accident that occurred in January 2010 in Lowndes County, Georgia. The Court held hearings on the Motion on June 2 and July 21, 2014. For the

reasons set forth below, the Court grants the Motion on the limited terms set forth herein.

I.     JURISDICTION

This Court has jurisdiction pursuant to the following sources: sections 151, 157(a), and 1334(b) of Title 28 of the United States Code and the United States District Court for the Southern District of Georgia's Order dated July 13, 1984, which refers all cases under Title 11 of the United States Code to the bankruptcy judges in the district. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(G). Furthermore, venue is proper. *See* 28 U.S.C. §§ 1408–1409. In accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure, I make the following Findings of Fact and Conclusions of Law.

II.     FINDINGS OF FACT[1]

A.     Procedural History

On February 26, 2014, the debtors filed their Chapter 13 petition along with their proposed plan to repay creditors. (Dckts. 1, 4.) Pursuant to their plan, the debtors proposed to pay all of their disposal income of $425.00 per month to the Chapter 13 Trustee ("Trustee") over a period of thirty-six months. The Trustee moved the Court to confirm the debtors' plan on April 21, 2014. (Dckt. 20.) On May 5, 2014, the Court confirmed the debtors' plan with payments of $425.00 per month. (Dckt. 25.)

---

[1] At the conclusion of the hearing on July 21, 2014, the Court made certain oral findings that are incorporated herein and supplemented by this Order. *See* Fed. R. Bankr. P. 7052.

The debtors listed the Movants, Marvin and Margaret Bruch, among their unsecured creditors in Schedule F with a disputed claim for an "unknown" amount. (Dckt. 1, at 25.) They also listed the pending state court lawsuit in response to question four of their Statement of Financial Affairs. (Dckt. 1, at 41.)

On April 23, 2014, the Movants filed the stay relief motion (dckt. 22) now under consideration by which they seek permission to continue the tort action against Hall now pending in the State Court of Lowndes County in order to liquidate that claim.

On May 27, 2014, Movants also filed an adversary complaint against Hall, claiming that "Defendant Selena Hall caused willful and malicious injury to Plaintiffs by operating a motor vehicle in a reckless and careless manner and in a deliberate manner as to cause a collision." (Adv. dckt. 1, at 9.) Movants seek to have this debt declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). (Adv. dckt. 1, at 9.) Mrs. Hall filed her answer in that adversary proceeding on June 18, 2014. (Adv. dckt. 6.)

B.  The Automobile Accident

According to the complaint filed by the Movants in the State Court of Lowndes County, Georgia, on January 19, 2010, the joint debtor Hall was involved in an episode of road rage with another driver, Tania Bauzo, on the streets of Valdosta,

Georgia. The alleged conflict began on Northside Drive where Hall first cut in front of the Ford Focus driven by Bauzo, and then screamed and cursed at her. After the traffic signal turned green, Hall turned left on to North Ashley Street, "rapidly accelerated" through her turn, and continued her rapid acceleration while traveling south on North Ashley Street. (Dckt. 22-1, ¶¶ 7–10). "Suddenly and without warning, [Selena Hall] slammed on the brakes . . . with the intent of annoying, harassing, molesting, intimidating, injuring, or obstructing the driver of the Ford Focus." (Dckt. 22-1, ¶¶ 14–15.) In reaction to this sudden stop, the driver of the Ford Focus, Bauzo, collided with the left rear corner of Hall's vehicle and careened into the oncoming traffic of the northbound lane where she collided with Marvin Bruch. (Dckt. 22-1, ¶¶ 16–20.) The complaint characterizes Hall as the aggressor[2] in this road rage incident whose actions caused the injuries to Mr. Bruch.

The injuries to Marvin Bruch were, indeed, very serious, and he underwent numerous surgeries that ultimately resulted in the loss of part of his leg.

---

[2] The facts surrounding the road rage as alleged in the Bruchs' complaint were not witnessed by Marvin Bruch, and they are disputed by Hall. Bauzo testified in her deposition that she was traveling about twenty-five miles per hour when she applied her brakes and that she thereafter lost control of her automobile. The investigating officer signed an affidavit declaring the following: "My investigation revealed there was no physical evidence of Selena A. Hall slamming on her brakes or stopping suddenly in front of Tania Bauzo. Even if Selena A. Hall had stopped suddenly, Tania Bauzo was following so closely behind that she was unable to come to a safe stop or otherwise maintain control of her vehicle."

C.  The State Court Litigation.

At the Court's request at the June 2, 2014 hearing, the parties provided the Court with many of the pleadings, motions, discovery, and orders entered in the Lowndes County case. A review of those materials reveals that the Bruchs filed their tort suit on August 23, 2010 in state court, naming only Hall as a defendant. The Bruchs had settled their claims against Bauzo prior to filing their complaint. Hall served her answer to the complaint on September 24, 2010. Thereafter, the state court litigation progressed as follows:

- On January 17, 2011, Hall's attorney deposed Margaret and Marvin Bruch. That same day, Hall was deposed.

- On October 10, 2011, Hall filed a motion for summary judgment to have the state court determine that her actions were not the proximate cause of the accident, or at least that punitive damages would not be recoverable by the Bruchs. She filed a brief in support thereof, as well as a statement of material facts as to which there is no genuine issue to be tried.

- On December 12, 2011, the Bruchs filed a response to Hall's motion for summary judgment and statement of material facts and briefed the issues as well.

- On December 29, 2011, Hall filed a reply brief.

- An affidavit of the officer that investigated the motor vehicle accident was taken on September 15, 2011. A witness's affidavit was taken on December 7, 2010.

- On February 23, 2012, the deposition of Bauzo was taken. That same day, a videotaped deposition of Thomas Macera was taken.

- On September 27, 2012, the State Court of Lowndes County entered an order denying in part and granting in part, Hall's motion for summary judgment. The order denied Hall's motion as to liability. The order granted the motion as to punitive damages, finding that:

> [T]here is no evidence to authorize a finding that [Hall]: (1) intended to cause actual harm to the Plaintiffs; (2) intended to cause general harm to others; (3) possessed specific intent to cause harm the Plaintiffs or the public at large; (4) acted with an entire want of care which raises the presumption of a conscious indifference to the consequences of suddenly applying her brakes; (5) acted with fraud, wantonness or oppression; or (6) acted with that level of willful misconduct or malice necessary to support the recovery of punitive damages.

At the hearing on stay relief, the parties agreed that the state court case had been on a trial calendar for many months, and that both parties had announced ready at one time or another. Discovery appears to be complete and the case is ready to be tried in the state court.

D. The Motion for Stay Relief

The Motion for Stay Relief (dckt. 22) seeks in its broadest terms to have the state court action proceed to liquidate the damages at issue and to recover any insurance coverage. However, the Movants also recite that the stay should be lifted "for the purpose of allowing the entry of a judgment up to the amount of the insurance proceeds, as determined by the jury." Further, the Movants "seek complete relief from the automatic stay 'for cause' under § 362(d)(1) to proceed to recover from Debtor's insurance coverage." (Dckt. 22, ¶ 5.) The Movants also seek "complete" relief from the stay "upon a determination that the judgment with respect to the claim at issue is non-dischargeable."

(Dckt. 22, ¶ 7.) Finally, the Movants propose that they be allowed to proceed with entry of a judgment to the extent of any insurance coverage, "and reserving the right of plaintiffs to petition this Court to lift the stay with respect to the entry of an excess judgment . . . ." (Dckt. 22, at 7.)

The debtors filed their response to the Motion on May 29, 2014. (Dckt. 29.) In addition to noting some of the internal inconsistencies in the relief sought by Movants, the debtors argue that the Motion is premature. The debtors urge the Court to allow the § 523(a)(6) adversary proceeding to go forward first, before allowing the state court litigation to proceed. They argue, in a somewhat circular fashion, that the collateral estoppel effect of the state court's ruling on summary judgment (that the Movants are not entitled to punitive damages[3]) will defeat the Movants' non-dischargeability action, so the state court action should not go forward. However, the state court order on partial summary judgment is not final because the trial court could change its mind, or the ruling could be reversed on appeal.

The Movants filed their supplemental brief in support of stay relief (dckt. 33) and raised for the first time the spectre of a potential bad faith claim that Hall may have against her own insurance company, USAA, for failing to settle the case within the

---

[3] It is far from clear that the state court's determination that punitive damages are not available under the requisite standard of proof under state law would require an award of general damages to be excepted from dischargeable under § 523(a)(6). But, that question is not before the Court.

policy limits. Such a bad faith claim might give the Movants a deeper pocket than the $100,000.00 policy limits available under Hall's liability policy. The Movants are not expressly seeking stay relief to pursue such bad faith litigation, and they acknowledge that such a cause of action, if it even existed, would be property of the bankruptcy estate.

### III. CONCLUSIONS OF LAW

Section 362(d)(1) of the Bankruptcy Code permits a bankruptcy court to terminate, annul, modify, or condition the stay for "cause." The party opposing stay relief has the ultimate burden of disproving the existence of "cause." 11 U.S.C. § 362(g)(2). However, the movant has the initial burden to show that "cause" exists. Section 362(d)(1) does not define "cause," so a bankruptcy court must determine "cause" based on the totality of the circumstances. *In re George*, 315 B.R. 624, 628 (Bankr. S.D. Ga. 2004) (Davis, J.).

#### A. Standard for Stay Relief

To determine whether to lift the automatic stay so that a party may continue litigation in another forum, most courts balance the hardship to the creditor if the creditor is not allowed to proceed with the lawsuit, against the potential prejudice to the debtor, the debtor's estate, and other creditors. *E.g., In re Carraway Methodist Health Sys.*, 355 B.R. 853, 854 (Bankr. N.D. Ala. 2006). In applying this balancing test, courts have considered numerous factors, such as:

> (1) whether relief would result in a partial or complete resolution of the issues;
> (2) lack of any connection with or interference with the bankruptcy case;
>
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
> (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the interests of other creditors;
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceeding; and
> (12) impact of the stay on the parties and the balance of harms.

*In re R.J. Groover Constr., L.L.C.*, 411 B.R. 460, 464 (Bankr. S.D. Ga. 2008) (Davis, J.).

In addition, although a more convenient forum is not one of the enumerated grounds for relief from stay in § 362(d), the legislative history of the section suggests that such a forum is cause under § 362(d)(1):

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere.

*In re Johnson*, 153 B.R. 49, 51 (Bankr. D. Idaho 1993) (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 50, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836).

On balance, many of these factors weigh in favor of granting stay relief.

For example, the state court is a tribunal with the necessary expertise to conduct a jury trial involving an automobile accident. Secondly, the case is ready to be tried, and the parties have spent substantial time and resources getting the case ready for trial. Thirdly, the fact that Hall is ably represented by experienced defense counsel at no expense to her or to the estate, weighs strongly in favor of allowing the state court action to proceed to judgment. There is no significant burden on the debtors that outweighs the interests of the Movants in having their tort claim resolved.

Notwithstanding the debtors' preference that the nondischargeability action proceed first, the interests of judicial economy weigh in favor of proceeding to trial in state court first to see if the Bruchs even *have* a claim against Hall to be excepted from discharge. A defense verdict would accord complete relief of the issues, as would a verdict for the Bruchs within the policy limits. Finally, the interests of other creditors will not be adversely affected in the least since this Chapter 13 case proposes a nominal dividend to unsecured creditors. In sum, the Court concludes that stay relief allowing the state court action to proceed should be granted.

B.  Scope of Stay Relief

Pursuant to 11 U.S.C. § 362(d), if the Court grants stay relief, it shall do so "by terminating, annulling, modifying, or conditioning such stay." In other words, the Court has some discretion in fashioning the relief. Thus, the harder issue in this case is

the *scope* of the stay relief that the Court should grant.

The matter only becomes problematic in the event of a verdict against Hall in *excess* of the policy limits of $100,000.00. If the trial of the case results in a defense verdict or a plaintiff's verdict within the policy limits and neither party appeals, the matter is fairly straightforward. The insurer would pay the verdict and the case would end. An excess verdict, on the other hand, creates complications. There would remain, after application of the insurance coverage, an unpaid judgment as to which the stay would normally remain in effect.

The Movants have suggested that "in the event an excess judgment is obtained, but before entry of said excess judgment, [Movants] would have the opportunity to petition the bankruptcy court for relief to pursue the entry of said excess judgment at that time." (Dckt. 22, at 6.)

Further, Movants seek an order permitting them "to proceed in the state court action and to proceed with entry of a judgment to the extent of any insurance coverage of the Debtor, Selena Hall; and reserving the right of plaintiffs to petition this Court to lift the stay with respect to the entry of an excess judgment." (Dckt. 22, at 7.)

The Court is unaware of a procedure under Georgia law by which two

AO 72A
(Rev. 8/82)

11

separate judgments might be rendered from a single verdict. To the contrary, the applicable statute mandates that the judgment conform to the verdict. O.C.G.A. § 9-12-9; *Kaufman Dev. Partners, L.P. v. Eichenblatt*, 749 S.E.2d 374, 378 (Ga. Ct. App. 2013). It is, however, possible for the Court to limit stay relief in a manner that would prevent the Movants from collecting or enforcing any portion of the verdict in excess of policy limits. The Movants might then file a renewed motion for stay relief to the extent they seek to pursue, or encourage Hall to pursue, a bad faith claim against USAA for failure to settle the case within the policy limits.

The complexity of such a bad faith claim in the context of a Chapter 13 case, where the debtors' discharge will not be granted, if at all, for several years, cannot be overstated. The Trustee has expressed an interest in such a bad faith claim, and the Movants have acknowledged that such a claim would be property of the estate. They hope to receive an assignment of such cause of action from the debtor and/or the Trustee. Further complicating this scenario is the Bruchs' pending adversary proceeding, which seeks a determination that any judgment that may be obtained against Hall is non-dischargeable. To the extent that the assignment of the bad faith claim requires the consent or cooperation of Hall, the pendency of the adversary casts doubt on that cooperation.

But all of these questions regarding what to do about a verdict in excess of

the policy limits are premature. The Movants must first convince a jury that Hall's alleged actions in suddenly applying her breaks caused Bauzo (traveling at twenty-five miles per hour according to her testimony) to collide with her from behind, and then careen out of control into Mr. Bruch's oncoming vehicle. Moreover, any verdict will presumably allocate liability between Hall and the "empty chair" of Bauzo, whose settlement with the Bruchs would not even be revealed to the jury.[4] It would be easy to imagine the jury finding that Bauzo was the aggressor since it was in her power to disengage from the road rage incident by choosing to slow down or take another route. In any event, it is pointless to try to predict the outcome of the trial.

ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that the Bruchs' Motion (dckt. 22) is GRANTED, but only on the following terms:

(A) The Movants may proceed with the litigation against the joint debtor, Selena A. Hall, now pending in the State Court of Lowndes County, Georgia (Civil Action No. 2010SCV0996), including any further discovery that the trial court may permit, motions in limine, trial, recordation of verdict, entry of judgment, and appeal or cross-appeal.

---

[4] Under Georgia law, the jury may be instructed to "apportion its award of damages among the persons who are liable according to the percentage of fault of each person. . . . In assessing percentages of fault, the trier of fact shall consider the fault of all persons or entities who contributed to the alleged injury or damages, regardless of whether the person or entity was, or could have been, named as a party to the suit. . . . Negligence or fault of a nonparty shall be considered if the plaintiff entered into a settlement agreement with the nonparty . . . ." O.C.G.A. § 51-12-33.

(B) If the verdict against the Debtor is within the policy limits of $100,000.00, after judgment is entered by the State Court of Lowndes County, Georgia, and no appeal is taken or such judgment is affirmed on appeal, then the stay is lifted to allow the Movants to collect the judgment only from the Debtor's insurance coverage limits.

(C) In the event that a verdict against the Debtor is rendered in excess of the policy limits of $100,000.00, after the judgment is entered by the State Court of Lowndes County, Georgia, and no appeal is taken or such judgment is affirmed on appeal, then the stay is lifted to allow the Movants to collect the judgment only from the Debtor's insurance coverage limits.

(D) The Movants shall take no action to collect or enforce any part of the judgment in excess of policy limits unless and until the non-dischargeability of this judgment (or any portion thereof) has been finally decided in the Movants' favor in the adversary proceeding now pending before this Court, and the time for the Debtor to appeal such judgment of non-dischargeability has run or such appeal has been finally resolved in the Movants' favor.

(E) In the event that a judgment in excess of the policy limits gives rise to a bad faith claim, and the Movants seek to compel the Debtor's participation in such claim, the Movants may petition this Court to further modify the stay as circumstances may require.

Dated at Savannah, Georgia, this 19th day of August, 2014.

_____
Edward J. Coleman, III
United States Bankruptcy Judge
Southern District of Georgia